IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **HECTOR VENTURA-MELÉNDEZ,** | **CIVIL NO. 20-1134 (DRD)** |
| *Ex Parte* Petitioner | |

**OPINION AND ORDER**

Pending before the Court is party of interest, United States of America's *Motion to Dismiss Complaint. See* Docket No. 24. Essentially, the Government is seeking a dismissal with prejudice of *Ex Parte* Petitioner, Hector Ventura-Meléndez's petition for a claim of ownership of a property allegedly acquired through adverse possession from the United States. *See* Docket No. 1, Exhibit No. 1, p. 2 ¶¶ 6 and 7. The property in question was identified in the *Complaint* as:

> RURAL: Parcel of land located in Barrio Puerto Ferro, sector Lujan, in the municipality of Vieques, Puerto Rico. It is constituted by zero point nine thousand five hundred fifty-five cuerdas (0.9555 cdas), equivalent to three thousand seven hundred fifty-five point six thousand three hundred twenty-four square meters (3,755.6324 m2). To the North, in various alignments that add up to a distance of five eight point six zero three six lineal meters (58.6036 m), it is adjacent to the Municipality of Vieques and the Department of the Navy of the United States of America. To the East, in various alignments that add up to a distance of eight two point nine nine zero one lineal meters (82.9901 m), it is adjacent to the Municipality of Vieques and the Department of the Navy of the United States of America. To the South, in various alignments that add up to a distance of three four point nine seven zero seven lineal meters (34.9707 m), it is adjacent to the Municipality of Vieques and the Department of the Navy of the United States of America. To the West, in various alignments that add up to a distance of seven zero point nine six nine nine lineal meters (70.9699 m), it is adjacent to PR Road Number nine nine seven (997).

*See* Docket No. 1, Exhibit 1, p. 1 ¶ 2. The petitioner filed his respective *Response in Opposition* thereto. *See* Docket No. 35. The Government later filed a *Reply. See* Docket No. 39.

For the reasons stated herein, the Court **GRANTS** the Government's *Motion to Dismiss Complaint* (Docket No. 24), and accordingly dismisses the instant case with prejudice.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The instant case arises from a *Notice of Removal* filed by the Government wherein an *Ex Parte Petition* (Civil No. VQ2020cv00001) was removed from the Puerto Rico Court of First Instance, Vieques Part, to the District Court as the property subject to the Petition is a property of the United States Government. *See* Docket No. 1, ¶ 1. The notice of removal was brought pursuant to 28 U.S.C. § 1441(a) which provides that,

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

*See id.*, ¶ 4. According to the Government, "[t]he instant case is removable to the United States District Court for the District of Puerto Rico, pursuant to 28 U.S.C. § 1441(a) because this Court has original jurisdiction of the matter under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a. The QTA provides the "exclusive means by which adverse claimants can challenge the United States' title to real property." *Block v. North Dakota*, 461 U.S. 276, 286 (1983). Moreover, "[t]he public policy embodied in the maxim *nullum tempus occurrit regi* (time does not run against the King) excludes the operation of adverse possession against the United States." *United States v. Hato Rey Bldg. Co.*, 886 F.2d 448, 450 (1st Cir. 1989).

Taking the allegations set forth in the Complaint as true, the facts are as follows: Mr. Ventura's *Petition* vests upon the civil possession of a property which began in 1984. He seeks for the Court to order the Property Registrar to register the property under his name as when he

began the civil possession of the property, he believed that the property belonged to the Municipality of Vieques, as the property at some point had been transferred to said Municipality by the United States. *See* Docket No. 34, ¶ 3.

Accordingly, "[o]n November 27, 2019, Ventura filed his ex-parte case at the Court of First Instance, Vieques Part claiming adverse possession title by virtue of the dispositions [of the] current law at the time, specifically Article 185 of the Mortgage Law of 2015, 30 L.P.R.A., section 6291." *Id.*, ¶ 5. However, the Government filed a *Notice of Removal*, as a party in interest, pursuant to 28 U.S.C. § 1441(a) essentially alleging original jurisdiction as the Petition related to a property of the United States Government, as such, the United States "has a vested interest in the matter." Docket No. 1, ¶¶ 2, 5. The Government further argues that "[t]he property in question appears to have been acquired by the United States through the Treaty of Paris between the Kingdom of Spain and the United States in 1899, henceforth, the United States acquired title to all public lands formerly owned by Spain. (30 Stat. 1754, Article II)." *Id.* at ¶ 3.

Thereafter, the Government filed a *Motion to Dismiss Complaint* (Docket No. 24), essentially arguing that although the Property subject to the Complaint was transferred to the Municipality of Vieques on December 22, 2010 under the Federal Lands-to-Parks Program of the United States Department of the Interior, it was solely for the public's recreational enjoyment. *See* Docket No. 24, ¶ 2.

Pursuant to the authority included in the Federal Property and Administrative Services Act of 1949, as amended, the General Services Administration (hereinafter, "GSA") determined the subject Property to be a surplus to the need of the United States of America. *See* Docket No. 24, Exhibit 2. Accordingly, the Property was assigned to the Department of Interior. *See* Docket

No. 24, Exhibit 3. Then, it was the Department of Interior who conveyed the Property to the Municipality of Vieques under the Federal Lands-to-Parks Program for recreational use and enjoyment, but subject to restrictions of use.

Accordingly, the Property was transferred through a Quitclaim Deed (hereinafter, the "Deed") to the Municipality. Therein, the property subject to the Complaint is described as Parcel-A and A-1 as follows:

> Parcel-A
> All that certain piece or parcel of land named Parcel 'A', situated in the Ward of Destino, Municipality of Vieques, Puerto Rico, bounded on the north by various owners of the Destino Community; on the south by the lands owned by U.S. Navy; on east by lands owned by the U.S. Navy, and on the west by the parcel from lands owned by the Commonwealth of Puerto Rico; said parcel being more particularly described as follows:
> Beginning at Control station 'E-32', a U. S. concrete monument located at the edge of State Road No. 997 on the Destino Area, said station having Lambert Coordinates North 111,757.192 feet, East 846,842.5640 feet, thence S 15º31 '09.01 "E, 3,999.2727 feet to Point E-8, a 2" diameter steel pipe, marking the southern corner and TRUE POINT OF BEGINNING of the hereinafter described parcel, said Point E-8, having Lambert Coordinates North 107,904.0564 feet, East 847,912.6137 feet; thence S 54º51 '01.1 "W, 2,895.630 feet to Point 1; thence S 48º3'25.3" W, 40.274 feet to Point E-3, a 3/4 diameter steel bar on a concrete base as well as all following points; thence N2756'00.0" E, 863.909 feet to Point E-4; thence **N** 17º57'00.0" E, 984.250 feet to Point E-4A; thence **N** 1757'O0.0"E, 984.250 feet to Point E-4B; thence **N** 1757'00.0" E, 292.299 feet to Point E-5; thence S 73º22'00.0"E, 440.760 feet to Point E-6, thence S 32º43'00.0"E, 991.872 feet to Point E-7; thence S 52º28'00.0"E, 426.21 O feet to Point E-8 the TRUE POINT OF BEGINNING, containing 57.1573 acres, more or less, as shown and identified on the U. S. Naval station, Roosevelt Roads, Puerto Rico, Public Works Drawing No. 6005 dated January 29, 1993, entitled "SURVEY OF VARIOUS PARCELS, DESTINO AREA PARCEL 'A' & PARCEL 'A-1', VIEQUES, PUERTO RICO."

> Parcel A-1
> All that certain piece or parcel of land named Parcel 'A1', situated in the Ward of Destino, Municipality of Vieques, Puerto Rico, bounded on the north by the lands owned by U.S. Navy; on the south by the lands owned by the U.S. Navy; on the east by the lands owned by U.S. Navy; and on the west by various owners of the parcel Destino Community; said parcel being more particularly described as follows:

4

> Beginning at Control Station 'E-32', a U.S. concrete monument located at the edge of State Road No. 997 on the Destino Area, said station having Lambert Coordinates North 111,757.5192 feet, East 846,842.5640 feet, thence S 34º09'11.1" E, 2,717.6868 feet to Point E-28, a 3/4" diameter steel bar on a concrete base, marking the southern corner and TRUE POINT OF BEGINNING of the hereinafter described parcel, said Point E-28, having Lambert Coordinates North 109,508.5237 feet, East 848,368.2903 feet; thence N 88º52'43.0"E, 493.302 feet to Point 9, a 2" diameter steel pipe as well as following points; thence S 20º52'32.0" E, 291.359 feet to Point 8; thence S14º23'33.0" W, 83.713 feet to Point 7; thence S 56º32'32.0"W, 88.231 feet to Point 6; thence S 76º12'29.0"W, 296.568 feet to Point 5; thence S 80º56'43.O"W, 83.932 feet to Point 4; thence S 79º28'06.5"W, 138.181 feet to Point 3A; thence S 33º04'00.6"W, 102.721 feet to Point 79; thence S 11 º01 '45.0"E, 27.233 feet to Point 82; thence S 6º07'05.0"W, 271.999 feet to Point 53; thence S 20º13' 46.O"W, 428.939 feet to Point 2A; thence S14º31'20.9"W, 171.479 feet to Point 2; thence S 53º48'58.9"W, 223.491 feet to point E-8, thence N 2º06'28.8"E, 706.875 feet to Point A, a 3/4" diameter steel bar on a concrete base as well as following points; thence N 81 º48'19.5"E, 254.320 feet to Point B; thence N 11 º40'00.0"E, 880.001 feet to Point E-28 the TRUE POINT OF BEGINNING, containing 10,9537 acres, more or less, as shown and identified on the U.S. Naval station, Roosevelt Roads, Puerto Rico, Public Works Drawing No. 6005 dated January 29, 1993, entitled, "SURVEY OF VARIOUS PARCELS, DESTINO AREA PARCEL 'A' & PARCEL 'A-1', VIEQUES, PUERTO RICO."

*Id.*, at ¶ 3; *see* Exhibit 1, pp. 1-2. As part of the covenants, the Deed specified that "[t]he Property shall be used and maintained in perpetuity for the public park and public recreation purposes for which it was conveyed as set forth in the Program of Utilization and plan contained in the application . . ." Docket No. 24, Exhibit 1 at 3, ¶ 1. It was further agreed that,

> [the] Property shall not be sold, leased, assigned, or otherwise disposed of except to another eligible governmental agency that the Secretary of the Interior agrees in writing can assure the continued use and maintenance of the Property for public part of public recreational purposes subject to the same terms and conditions in the original instrument of conveyance. Any mortgage, lien, or any other encumbrance not wholly subordinate to the reverter interest of the Granter shall constitute an impermissible disposal. (Emphasis ours).

*Id.* at ¶ 3. Essentially, "Plaintiff is alleging adverse possession of a property of the United States, when in fact the property was transferred to the Municipality." Docket No. 24 at ¶ 4.

5

In the alternative, the Government suggests that the *Complaint* should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), as if Plaintiff alleges that the property was adversely possessed or transferred to him by the Municipality, an impermissible disposal will ensue and make the Property subject to be reverted, and must therefore, be returned to the United States. *Id.*, ¶ 5.

In *Response*, Plaintiff argues that he began the civil possession of the Property in 1984. At the time, he believed the Property belonged to the Municipality of Vieques because it had been transferred to the Municipality by the United States. *See* Docket No. 34 at 2, ¶ 3. Plaintiff raises several arguments in support of the contention that he believed the Municipality owned the property he was civilly possessing, to wit,

1. In 1996, the Municipality of Vieques filed suit against Ventura requesting him to remove some construction equipment located at Ventura, property alleging they were scrap. The Municipality alleged that they were the owner of the property in which the equipment was located. The court dismissed the complaint stating that the issue was related to the boundaries of the property and invited the parties to perform a survey to resolve the situation. It never happened.

2. In 2001, Ventura finished the construction of his residency of approximately 2,124 square meters.

3. In relation to said construction, in February 2002, the Municipality endorsed the permit to provide water and electricity to the house built by Ventura.

4. In October 2010, the Municipality endorsed Ventura's petition to obtain the Use Permit for his residency.

5. In 2013, Ventura ceded approximately one acre of his two-acre property to David Lee Castro Lee. The property ceded was located in the northern part of the property. On May 17, 2013, Mr. Castro sold said property to Evgeny Platonov. See exhibit 1.

> 6. In said deed, a survey was formed part of the deed showing the division of Ventura's two- acre property in two independent properties.
>
> 7. Later, Mr. Platonov built a house in the property which was never finished.

*Id.* at 3. The United States was notified of Plaintiff's Petition because the survey he performed showed the federal government as an adjacent owner. As such, Plaintiff is required to notify the Petition to all adjacent owners. *See* Docket No. 34 at 3, ¶ 8. By virtue of said notification is that the United States removed the case to this Court. According to Plaintiff, "[t]he facts revealed during this litigation confirm that the last immediate owner of the property was the Municipality of Vieques since 2010 and one of its prior owners was the United States." *Id.*, at 4, ¶ 10. As such, Plaintiff requests a dismissal without prejudice in order to pursue an adverse possession action against the Municipality. However, the Court finds that Plaintiff is precluded from pursuing said action and explains.

**I.   STANDARD OF REVIEW**

A motion to dismiss may be filed pursuant to Federal Rule of Civil Procedure 12 (b) (6) which states that "a party may assert [. . .] defense by motion [of] failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint in a suit must clearly state all of the plaintiffs' claims against the defendants and specify a claim for relief stating the remedy that plaintiffs believe should be granted to them. Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement of relief above the speculative level on the assumption that all the allegations in the complaint are

true (even if doubtful in fact).') (*quoting Twombly*, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id*. at 570; *see e.g., Ashcroft v. Iqbal*, 556 U.S. 662

When considering a motion to dismiss under this rule, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, and *Iqbal*. "Context based" means that a plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal*, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (*quoting Iqbal*, 556 U.S. 678) (*quoting Twombly*, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id*.

Thus "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but has not 'show[n]' 'that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (*quoting* Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (*citing Twombly* 550 U.S. at 567).

Further, the First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" even if seemingly incredible. *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (*citing Twombly*, 550 U.S. at 556). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F.3d at 29. Additionally, a district court may not weigh evidence in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Massachusetts Delivery Ass'n v. Coakley*, 671 F.3d 33, 39 n. 6 (1st Cir. 2012) (emphasizing that a primary difference between a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) is that, under Rule 12(b)(1), a court may weigh the evidence and make factual determinations).

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st

9

Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id*. at 596; *see* Iqbal, 556 U.S. at 681 ("To be clear, we do not reject bald allegations on the ground that they are unrealistic or nonsensical. . .. it is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.,* 621 F.3d 10, 14 (1st Cir. 2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen out rhetoric masquerading as litigation.").

The First Circuit outlined two considerations for district courts to note when analyzing a motion to dismiss. *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly-Iqbal*. *Id*. at 104. Second, district courts should accord "some latitude in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id*. (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.) (internal citations and quotations omitted).

### III.   LEGAL ANALYSIS

#### A. *Loss of title of United States to lands in territories through adverse possession or prescription pursuant to 48 U.S.C. § 1489*

48 U.S.C. § 1489 provides that "[o]n and after March 27, 1934, no prescription or statute of limitations shall run, or continue to run, against the title of the United States to lands in any territory or possession or place or territory under the jurisdiction or control of the United States; and no title to any such lands of the United States or any right therein shall be acquired by

adverse possession or prescription, or otherwise than by conveyance from the United States." The Supreme Court has explained that "[w]hen the United States becomes entitled to a claim, acting in its governmental capacity, and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." *United States v. Summerlin*, 310 U.S. 414, 417 (1940). Therefore, the public policy manifested in the maxim *nullum tempus occurrit regi* (time does not run against the King) excludes the applicability of adverse possession against the United States. *See United States v. Thompson*; 98 U.S. 486 (1879) *United States v. Summerlin*, 310 U.S. 414, 417, 60 S.Ct. 1019 1020, 84 L.Ed. 1283 (1940). *See Texas v. Louisiana*, 410 U.S. 702, 93 S.Ct. 1215, 35 L.Ed.2d 646 (1973); *United States v. California*, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947); *United States v. Pappas*, 814 F.2d 1342 (9th Cir.1987); *United States v. Stubbs*, 776 F.2d 1472 (10th Cir.1985); *United States v. 1,629.6 Acres of Land*, 503 F.2d 764 (3d Cir.1974); *Engel v. United States*, 258 F.2d 50 (6th Cir.1958).

Plaintiff argues that the United States is authorized by law to dispose of its properties under certain conditions. Section 484 of the United States Code provides in its pertinent part that,

> [t]he Administrator, in the Administrator's discretion and under regulations that the Administrator may prescribe, may assign to the Secretary of the Interior for disposal surplus real property, including buildings, fixtures, and equipment situated on the property, that the Secretary recommends as needed for use as a public park or recreation area.

48 U.S.C. § 484. It is further added that "[t]he Secretary transfers or leases surplus Federal real property on an "as is, where is," basis without warranty of any kind." 34 C.F.R. 12.9. According to Plaintiff, "when in 2010 the government transferred the property to the Municipality, the

residence of Ventura had been constructed 9 years before. The United States did not demand[sic] to the Municipality to evict Ventura as part of the transaction.

The applicable normative is fatal to Plaintiff's argument, as the rule of law is that adverse possession does not run against the United States of America. Most critical and determinative, the Quitclaim Deed specifically provides the option to seek reversion of the Property should the Grantee utilize the Property for a purpose that was not intended by the Government upon transfer to the Municipality. Although Plaintiff puts forth an argument that is deeply researched, rich in references to the law and well drafted, the arguments are ultimately unfounded. Therefore, a dismissal of the case at bar is warranted.

## IV.    CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS** the Government's *Motion to Dismiss Complaint* (Docket No. 24). Judgment of dismissal with prejudice is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of September, 2021.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge